UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
ONEBEACON AMERICA                         )
INSURANCE COMPANY,                        )
                                          )
          Plaintiff,                      )     Civil Action No.
                                          )     14-13992-FDS
     v.                                   )
                                          )
CELANESE CORPORATION,                     )
                                          )
          Defendant.                      )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS OR TO STAY

**SAYLOR, J.**

This is a declaratory judgment action arising from an insurance coverage dispute. Plaintiff OneBeacon America Insurance Company has filed suit against defendant Celanese Corporation. OneBeacon seeks a declaratory judgment that it does not have a duty to indemnify Celanese as to judgments and settlements in underlying claims. Celanese has moved to dismiss the action or, alternatively, stay it in favor of a similar action now pending in the Northern District of Texas. For the following reasons, defendant's motion will be granted in part, and this action will be stayed pending further developments in the Texas litigation.

**I.  Background**

   **A.  Parties**

OneBeacon is a Pennsylvania corporation with a principal place of business in Minnesota. (Am. Compl. ¶ 3). Until 2013, OneBeacon was organized under the laws of the Commonwealth of Massachusetts. (*Id.*). It is licensed to do business in Massachusetts. (*Id.*).

Celanese Corporation is a Delaware corporation with a principal place of business in Texas. (Am. Compl. ¶ 5).

### B. <u>Underlying Product Liability Lawsuits</u>

Currently, there are various product liability lawsuits pending against Celanese in different jurisdictions. (Am. Compl. ¶ 8). The plaintiffs in those lawsuits seek recovery from Celanese for personal injuries that are alleged to arise from exposure to Celanese's products or premises. (*Id.* ¶ 9).

### C. <u>Insurance Policies</u>

Commercial Union Insurance Company of New York issued a series of four primary liability policies to Celanese Corporation of America covering the period from June 1, 1965, to January 1, 1972. (*Id.* ¶¶ 10-11). OneBeacon is the successor to Commercial Union. All of the policies provided in part as follows:

> I. <u>COVERAGE — BODILY INJURY LIABILITY</u>. [Insurer agrees] [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence as defined herein and arising out of:
>
>   A. the ownership, maintenance, operation, use loading or unloading of any automobile; and
>
>   B. all other operations of the insured and such other activities as may be incidental thereto other than the ownership, maintenance, operation, use, loading or unloading of an automobile.

(*Id.* ¶ 12). The policies defined an "occurrence" as "an event, or continuous or repeated exposure to conditions, which unexpectedly causes bodily injury or property damage during the policy period." (*Id.* ¶ 13). Each of the policies contained an "Assistance and Cooperation of the Insured" condition, which provided as follows:

2

> The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur any expenses other than for such immediate medical and surgical relief to others as shall be necessary at time of accident.

(*Id.* ¶ 14).

The policies do not contain a choice-of-law provision. At the time they were issued, it appears that the insurer (Commercial Union) and insured (Celanese) were both based in New York.

### D. 1998 Cost-Sharing Agreement

In 1998, Celanese and OneBeacon entered into an agreement to share the costs of defending against certain claims. (Pl.'s Opp. Mot. Dismiss 3). Under that agreement, OneBeacon "generally agreed to pay a one-sixth share of Celanese's defense costs as to claims covered by that agreement." (*Id.*). In exchange, OneBeacon was released from any further defense-cost related obligation with respect to covered claims. (*Id.*).

### E. Past Litigation Between Celanese and OneBeacon

The parties have engaged in related litigation on two prior occasions.

#### 1. 2006 Massachusetts Litigation

In 2006, Celanese brought suit against OneBeacon in Massachusetts seeking damages for, among other things, breach of the 1998 cost-sharing agreement and breach of the primary liability policies. *See* Complaint, *Celanese Corp. v. OneBeacon America Ins. Co., et al.*, Civ. Action No. 06-1625-BLS2 (Mass. Super. Ct. Dec. 27, 2006). In addition, Celanese sought a declaratory judgment that defined the obligations of the parties under the 1998 cost-sharing agreement and the primary liability policies and that required "full and timely future

performance pursuant to the Liability Insurance Policies, including full payment of defense costs not otherwise reimbursed by a Celanese insurance company, as well as of 'all sums' imposed on Celanese . . . ." *Id.* ¶¶ 32, 40, 62. It alleged that OneBeacon materially breached the cost-sharing agreement. *Id.* ¶ 26. As a result, it contended that the primary liability policies defined OneBeacon's obligations to its insured. *Id.* ¶ 28. Specifically, Celanese contended that OneBeacon was "obligated to pay 100% of Celanese's unreimbursed costs of defense . . . ." *Id.* ¶ 28.

In addition to suing OneBeacon, Celanese also brought claims against Resolute Management, Inc. Resolute is a third-party claim administrator for OneBeacon. (*Id.* ¶ 4).[1] Celanese asserted claims against Resolute for tortious interference with contract and unfair and deceptive trade practices under Chapter 93A. *Id.* ¶¶ 71-82. The complaint alleged that Resolute "as the agent for [OneBeacon]" caused OneBeacon "materially to breach each of the" agreements. *Id.* ¶¶ 31, 74.

OneBeacon moved for a determination that the law of New York and not Massachusetts applied to the primary liability policies. *See Celanese Corp. v. OneBeacon America Insurance Co.*, 25 Mass. L. Rptr. 293, *6 (Super. Ct. Dec. 29, 2008). In its motions for summary judgment, Celanese argued that "[t]here is no [c]onflict [b]etween Massachusetts [l]aw and the [l]aw of [a]ny [o]ther [i]nterested [f]orum." Plaintiff Celanese Corp.'s Mem. Law Support Mot. Summ. J. Regarding Estoppel OneBeacon's Policy Defenses at 5, *Celanese Corp. v. OneBeacon America Insurance Co.*, Civ. Action No. 06-1625-BLS2 (Mass. Super. Ct. July 17, 2008); Plaintiff Celanese Corp.'s Mem. Law Support Mot. Summ. J. Regarding OneBeacon's Duty To Defend at

---

[1] Resolute is a Delaware corporation with a principal place of business in Massachusetts. (*Id.*; Miguel Ex. A).

4

8, *Celanese Corp. v. OneBeacon America Insurance Co.*, Civ. Action No. 06-1625-BLS2 (Mass. Super. Ct. July 17, 2008). Celanese contended that Massachusetts law should therefore apply to the substantive issues in the case. *Id.* In its argument for the application of Massachusetts law, Celanese noted that Texas law also did not conflict with Massachusetts law on the relevant issues. *Id.*

In resolving the issue, the Superior Court concluded that "a choice of law analysis is unnecessary because there is no meaningful disparity between the law of Massachusetts and New York regarding an insurer's duty to defend." *Celanese Corp.*, 25 Mass. L. Rptr. 293, at *6. The court stated in a footnote that

> [its] ruling on OneBeacon's motion addresses the applicable law regarding duty to defend. While the Court concludes . . . that there is no meaningful distinction between the law of Massachusetts and New York regarding insurers' obligations to pay defense costs, there may well be a distinction between the two jurisdictions regarding the allocation of liability among multiple insurers to indemnify claims against the insured.

*Id.* at *6 n.3. Because OneBeacon argued for the application of New York law and Celanese argued that Massachusetts law did not differ from any jurisdiction that may apply (such as New York or Texas), the court did not have occasion to address the possible applicability of Texas law.

In resolving the various motions for summary judgment, the Superior Court ruled that the 1998 cost-sharing agreement "was intended to provide the sole contractual mechanism by which Celanese was to pay defense costs for the specific claims . . . ." *Id.* at *3. The court left it to the jury to decide whether the 1998 agreement expired by its own terms in 2001 or in 2004. *Id.* at *6. The jury found that the parties agreed to extend the 1998 cost-sharing agreement beyond its initial three-year term, that the agreement had not expired or been terminated, and that

5

OneBeacon breached the agreement by failing to make payments thereunder when due. Special Jury Verdict, *Celanese Corp. v. OneBeacon America Insurance Co.*, Civ. Action No. 06-1625-BLS2 (Mass. Super. Ct. Feb. 10, 2009). As a result, the jury awarded damages to Celanese to compensate for that breach. *Id.* The jury also rendered an advisory verdict, subsequently adopted by the court, that Resolute violated Mass. Gen. Laws ch. 93A. *Id.* As for the intentional interference claim against Resolute, the jury concluded that Resolute had "proved by a preponderance of the evidence that, as an agent of OneBeacon for purpose of administering Celanese's claim for reimbursement of *defense costs* under the OneBeacon insurance policies, the 1998 Cost Sharing Agreement, and the Photo Resist Agreement, Resolute acted within the scope of its agency, and not maliciously." *Id.* (emphasis added). Therefore, the court found for Resolute on the claim of tortious interference. *Id.*

### 2. 2010 Massachusetts Litigation

After the jury found that the 1998 cost-sharing agreement remained in effect, Celanese (1) elected to terminate the agreement, pursuant to its terms, and (2) demanded that OneBeacon pay the entirety of Celanese's defense costs for the underlying bodily injury claims pursuant to the primary liability policies. (Felice Aff. Ex. I). In response, "OneBeacon offered to defend Celanese without a reservation of rights with respect to all pending cases that potentially alleged exposure during the OneBeacon policy periods." (Pl.'s Opp. Mot. Dismiss at 6 (citing Felice Aff. Ex. J)). As an apparent condition of the offer, OneBeacon sought to "control the defense of the cases and sought to transfer certain defense responsibilities and cases to new counsel." (*Id.*). Celanese rejected the offer because it was "not willing to allow OneBeacon to choose counsel or control its defense . . . ." (Felice Aff. Ex. K). Celanese also reiterated its demand "that

6

OneBeacon agree, in writing and without reservation of rights, to reimburse Celanese 100% of its reasonable costs incurred in defending against these suits on a go-forward basis." (*Id.*).

In 2010, OneBeacon filed an action in the Superior Court in Massachusetts, seeking a declaratory judgment that "(a) the OneBeacon policies give it the right to select counsel for and to control the defense of the tendered lawsuits and (b) Celanese's rejection of OneBeacon's offer to defend is a breach of Celanese's obligations under the OneBeacon policies and discharges any ongoing OneBeacon obligations thereunder." Compl. ¶ 39, *OneBeacon America Insurance Co. v. Celanese Corp.*, Civ. Action No. 2010-0857-BLS2 (Mass. Super. Ct. Mar. 2, 2010). In the alternative, OneBeacon sought a declaration that "[its] obligations under the OneBeacon policies are limited to a pro rata share of the cost to defend and indemnify Celanese as to the Underlying Claims and all similar future claims." *Id.* ¶¶ 3, 45. Celanese counterclaimed, alleging (1) breach "of contract by OneBeacon for failure to pay defense costs and for seeking 'unlawfully . . . [to] usurp control;'" (2) breach of the covenant of good faith and fair dealing; (3) "declaratory relief that OneBeacon has a duty to pay all defense costs while Celanese retains control of that defense, and that OneBeacon is 100% (not *pro rata*) liable for those costs;" and (4) violation of Mass. Gen. Laws ch. 93A by OneBeacon and Resolute. *OneBeacon America Insurance Co. v. Celanese Corp.*, Civ. Action No. 2010-0857-BLS2 (Mass. Super. Ct. May 27, 2011).

The parties filed motions for summary judgment, and OneBeacon filed a motion to dismiss Celanese's Chapter 93A counterclaim. *Id.* at 1. In its memorandum and order on the cross-motions for summary judgment and the motion to dismiss, the Superior Court noted that "[t]he parties . . . agree that pursuant to the court's prior Orders, Massachusetts law governs interpretation of their contract." *Id.* at 7. In its ruling, the court determined that the primary

liability policies gave OneBeacon the right to select counsel and to control the defense. *Id.* at 11. However, the court found that Celanese was not in breach of its contractual obligations to cooperate. *Id.* In addition, the court sided with Celanese in finding that it was not required to share the cost of defense with OneBeacon. *Id.* Therefore, the court granted in part and denied in part OneBeacon's motion for summary judgment. *Id.* at 11-12. The court also granted in part and denied in part OneBeacon's motion to dismiss the Chapter 93A counterclaim. *Id.* at 12-13.

After issuing the May 27 memorandum and order, the Superior Court issued two more memoranda and orders on subsequent cross-motions for summary judgment. One of the disputes between the parties was whether OneBeacon owed Celanese defense costs during the period between the termination of the 1998 cost-saving agreement and the Superior Court's determination that OneBeacon could control the defense. In a September 14, 2012 memorandum and order, the Superior Court "concluded that payment of reasonable and necessary defense costs is an integral part of the duty to defend and found that Celanese was entitled to reimbursement of 'its necessary and reasonable costs, for the period April, 2009 through May, 2011.'" Report of Special Master Maria C. Walsh at 11, *OneBeacon America Insurance Co. v. Celanese Corp.*, Civ. Action No. 2010-0857-BLS2 (Mass. Super. Ct. April 11, 2013). Specifically, Celanese had sought reimbursement for defense costs totaling $7,215,406.45. *Id.* at 4. The court referred to the special master the question of whether that amount constituted reasonable defense costs that OneBeacon owed Celanese. *Id.* at 2, 11. Following a March 2013 hearing, the special master issued a report on April 11, 2013, in which she found "that Celanese did not sustain its burden of proving that the 'flat fee' it paid was reasonable and necessary." *Id.* at 13. However, she determined that OneBeacon still "had an obligation to provide legal defense

services to Celanese." *Id.* Accordingly, the special master concluded that OneBeacon owed Celanese $2,435,921.49 in reasonable defense costs for the period from April 2009 through May 2011. *Id.* at 14-15.

On January 24, 2014, the Superior Court adopted the special master's report in its entirety, and ordered "entry of judgment in favor of Celanese on the attorneys' fees claim in the amount of $2,435,921.49, plus prejudgment interest from May 27, 2011 through May 31, 2013." *OneBeacon America Insurance Co. v. Celanese Corp.*, Civ. Action No. 2010-0857-BLS2 (Mass. Super. Ct. Jan. 24, 2014). The final judgment entered on January 27, 2014. Order of Final Judgment, *OneBeacon America Insurance Co. v. Celanese Corp.*, Civ. Action No. 2010-0857-BLS2 (Mass. Super. Ct. Jan. 27, 2014).

On February 25, 2014, OneBeacon filed a notice of appeal, appealing the final judgment and the memoranda and orders of May 27, 2011; November 21, 2011; September 14, 2012; and January 24, 2014. (Felice Aff. Ex. Q). On March 11, 2014, Celanese filed a notice of cross-appeal, appealing the final judgment and the same memoranda and orders. (Felice Aff. Ex. R). According to OneBeacon, the parties currently are waiting for the Superior Court record to be assembled so the appeal can proceed with the Massachusetts Appeals Court. (Pl.'s Opp. Mot. Dismiss at 7).

### F. Present Dispute

#### 1. The Texas Action

On October 2, 2014, Celanese filed an action against OneBeacon in state court in Dallas County, Texas, alleging that OneBeacon breached the liability policies, violated the Texas Insurance Code, and breached its obligations of good faith and fair dealing by failing to pay or

9

reimburse Celanese's indemnity costs for the underlying claims.  Compl., *Celanese Corp. v. OneBeacon America Insurance Co.*, Civ. Action No. 14-03985-L (N.D. Tex. Oct. 2, 2014). According to Celanese, OneBeacon has failed and refused "to pay or reimburse all or any part of Celanese's legal liabilities, over $6,871,500, spent in settlement or judgment in connection with" the underlying claims.  *Id.* ¶¶ 14, 28.  Celanese contends that OneBeacon is bound "to pay 100% of Celanese's unreimbursed indemnity costs paid and incurred in judgments and settlements associated with the" underlying claims.  *Id.* ¶ 18.  The Texas complaint also alleges tortious interference with the insurance policies by Resolute Management.  *Id.* ¶¶ 21, 30-34.  The complaint alleges that "[f]or purposes of this [c]ause of [a]ction, Resolute is **not** the agent of OneBeacon . . . , [and] has willfully and purposefully induced OneBeacon materially to breach each of the [l]iability [i]nsurance [p]olicies, for the sole benefit of Resolute, its owners and affiliates . . . ."  *Id.* ¶ 32 (emphasis in original).

The Texas lawsuit was a matter of public record as of October 4, 2014.  (Miguel Aff. ¶ 6).  OneBeacon was served on October 14, 2014.  (Miguel Aff. ¶ 8).  On November 11, 2014, it removed the action to the United States District Court for the Northern District of Texas.  On December 1, 2014, Celanese filed a motion to remand the case to state court.  That motion is still pending.

### 2. **The Massachusetts Action**

On October 10, 2014, OneBeacon filed the complaint in this action in Suffolk Superior Court.  Celanese was served on October 16, 2014.  OneBeacon filed an amended complaint on October 20, 2014.  In the amended complaint, OneBeacon seeks a declaration from the Court that it has no duty to indemnify Celanese in underlying claims because (1) any contractual

10

indemnity claim is barred by the statute of limitations; (2) the underlying claimants did not suffer bodily injury during any OneBeacon policy period; and (3) Celanese breached or otherwise failed to comply with conditions precedent contained in each of the OneBeacon policies. (Am. Compl. ¶¶ 2, 19, 26, 33). To the extent that it has a duty to indemnify Celanese, OneBeacon alleges that its obligations are limited to its "pro rata share of the amounts paid by Celanese for claims actually covered by OneBeacon policies." (*Id.* ¶¶ 2, 38).

Celanese removed the case to this Court on the basis of diversity jurisdiction. On October 27, 2014, Celanese filed a motion to dismiss on the grounds that it filed the Texas action first and Massachusetts is not a substantially more convenient forum than Texas. In the alternative, Celanese seeks a stay to prevent duplicative litigation. In opposition, OneBeacon contends that the motion should be denied because (1) venue is proper under Fed. R. Civ. P. 12(b)(3); (2) *Wilton* abstention is not permissible because the Texas lawsuit has been removed to federal court; (3) the Texas action is not more comprehensive than this action; and (4) Massachusetts is the proper forum for resolving this dispute.

## II. <u>Legal Standard</u>

The "first-to-file" rule is a doctrine intended to promote judicial efficiency and to avoid duplicative litigation. First announced nearly two hundred years ago, the rule generally requires that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535 (1824).

While it is still the case that the first filed action is "generally preferred in a choice-of-venue decision," *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987), the first-to-file rule is not to be applied in a mechanical way. *See, e.g., Kerotest Mfg. Co. v. C-O Two*

*Fire Equip. Co.*, 189 F. 2d 31, 34-35 (3d Cir. 1951). Exceptions to the rule are not rare. *Micron Tech, Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). A district court has discretion to give preference to a later-filed action when that action will better serve the interests involved. *A123 Sys. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 279 (D. Mass. 2009). There are at least two widely-recognized exceptions to the first-filed rule: where (1) there are "special circumstances" justifying an exception, such as where a party engages in misleading conduct to win a "race to the courthouse"; and (2) the balance of convenience substantially favors the second-filed action. *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002); *see also TransCanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp.2d 343, 347 (D. Mass. 2005) (citations omitted); *Biolitec, Inc. v. AngioDynamics, Inc.*, 581 F. Supp.2d 152, 158 (D. Mass. 2008).

### III. Analysis

Celanese contends that the Court should dismiss this action in favor of the first-filed Texas lawsuit. It is undisputed that both the Texas litigation and this litigation seek resolution of OneBeacon's liability to Celanese for indemnification under the primary insurance policies.[2] There is also no dispute that the Texas action is the first-filed, having been filed eight days

---

[2] The Texas lawsuit also includes a claim for tortious interference against Resolute. There is a dispute as to whether that claim will remain in the Texas action. OneBeacon contends that the claim against Resolute is barred under the doctrine of issue preclusion because the 2006 Massachusetts litigation determined that Resolute as an agent of OneBeacon could not tortiously interfere with the contract of its principal. In the 2006 action, the jury concluded that Resolute "proved by a preponderance of the evidence that, as an agent of OneBeacon for purpose of administering Celanese's claim for reimbursement of *defense costs* under the OneBeacon insurance policies . . . Resolute acted within the scope of its agency and not maliciously." *See* Special Jury Verdict (emphasis added). It is unclear whether the jury verdict gives rise to a finding of issue preclusion to Celanese's claim for tortious interference with respect to indemnity costs. This issue is at the center of Celanese's motion to remand the Texas action to state court.

before the Massachusetts action.³ OneBeacon contends that the Court should depart from the first-to-file rule because (1) Celanese engaged in forum-shopping when it filed the Texas lawsuit and (2) Massachusetts is a substantially more convenient forum than Texas.

    A.    **<u>Which Court Should Decide the Issue</u>**

The first question is whether this Court, rather than the court in Texas, should decide the forum in which this action should proceed.

The first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, but also which forum should *decide* which forum is appropriate. Courts in nearly every circuit have held that the court in which the second action was filed should generally defer to courts in the first-filed action. *See, e.g.*, *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (holding that, as between two courts presented with duplicative litigation, the court in which the action was first filed "should be allowed to first decide issues of venue"); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) ("normally the forum non conveniens argument should be addressed to the court in the first-filed action"); *Tiber Labs., LLC v. Cypress Pharmaceuticals, Inc.*, 2007 WL 3216625, at *2 (N.D. Ga. May 11, 2007) ("Thus, once the court determines that a likelihood of substantial overlap exists between the two suits, it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed."). The First Circuit seems to have adopted this rationale as well. *See TPM Holdings v. Intra-Gold Indus.*, 91 F.3d 1, 4 (1st Cir. 1996).

The matter is complicated somewhat by the existence of a pending motion to remand in

---

³ Although Celanese filed in Texas state court before OneBeacon filed in Massachusetts state court, the Massachusetts action was removed prior to the Texas action being removed. Neither party has addressed whether this fact would change the first-to-file analysis, and the Court sees no reason why it should. Therefore, the Court finds that the Texas action was filed prior to the Massachusetts action.

13

the Texas action. If that motion were to be granted, the issue might then become one of abstention under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).[4] It also does not appear that OneBeacon has asked the Texas court to dismiss or transfer the action. Nonetheless, it appears, at least presumptively, that the usual rule should apply—that is, the first-filed court should decide whether the case should remain in its court.

### B. Whether an Exception to the General Rule Should Apply

As noted, there are at least two exceptions to the first-filed rule: where there are "special circumstances" justifying an exception, and when the balance of convenience substantially favors the first-filed action. *Holmes Group*, 249 F. Supp. 2d at 16. It is unclear whether there are likewise exceptions to the principle that the court in which the first-filed action is pending should decide which case should proceed. On the assumption that there may be circumstances where equity requires that the decision be made in the court where the second-filed action is pending, the Court will examine whether such an exception should apply here.

As an initial matter, this case does not present a literal "race to the courthouse." Celanese has sought payments for indemnity from OneBeacon since 2012, and there is no allegation that Celanese misled or deceived OneBeacon into staying its hand in order to permit it to file in Texas. Furthermore, the Celanese lawsuit was not filed in an exotic location, or a jurisdiction where there is some reasonable basis to believe that the issues may not be resolved

---

[4] In *Wilton*, petitioner London Underwriters refused to defend or indemnify respondent Hill Group, and sought a declaration that its policies did not cover certain judgments at issue. *Id.* at 279-80. The Hill Group filed an action in state court, and moved to dismiss or stay the federal declaratory judgment action. *Id.* The district court entered a stay, determining that the state litigation "encompassed the same coverage issues raised in the declaratory judgment action and determined that a stay was warranted in order to avoid piecemeal litigation and to bar London Underwriters' attempts at forum shopping." *Id.* at 280. The Supreme Court ruled that the district court "acted within its bounds in staying this action for declaratory relief where parallel proceedings presenting opportunity for ventilation of the same state law issues, were underway in state court." *Id.* at 290. If the Texas action is remanded to state court, it may be appropriate for this Court to consider such abstention.

fairly and equitably.

OneBeacon contends that Celanese engaged in improper forum-shopping when it filed the Texas lawsuit. In support of that contention, OneBeacon points to the previous litigation in Massachusetts state court as evidence that Celanese "ran from the jurisdiction most familiar with the parties' ongoing disagreements and sought more favorable review in Texas." (Pl.'s Opp. Mot. Dismiss 15). It is true that the prior litigation between OneBeacon and Celanese occurred in Massachusetts. However, that litigation occurred in state court and the present action is in federal court; this Court in fact has no particular familiarity with the dispute.[5]

OneBeacon further contends that Celanese filed in Texas because the law of Texas concerning indemnity allocation law is more favorable to it than that of Massachusetts or New York. As a preliminary matter, it is unclear what law should apply to the indemnity dispute. OneBeacon appears to contend that Celanese previously argued for the application of Massachusetts law to this contract, and that the Massachusetts Superior Court agreed that Massachusetts law should apply. The reality, however, is not so simple. In the 2006 litigation, OneBeacon argued for application of New York law. Celanese argued that there is no conflict between Massachusetts, New York, or Texas law regarding an insurer's duty to defend. The Superior Court concluded that "a choice of law analysis is unnecessary because there is no

---

[5] OneBeacon characterizes the 2006 and 2010 Massachusetts actions as repeatedly resulting in "rulings under Massachusetts law adverse to Celanese." (Pl.'s Opp. Mot. Dismiss 14). However, that characterization does not present a complete picture of the prior litigation. The 2006 and 2010 Massachusetts actions yielded mixed results for both parties. In the 2006 litigation, the jury found that the 1998 cost-sharing agreement was still in effect; however, it also found that OneBeacon breached that agreement and thus owed Celanese damages for failing to make payments when due. In the 2010 litigation, although the court determined that OneBeacon had the right to select counsel and to control the defense, it found that Celanese did not have to share the cost of defense with OneBeacon. Although Celanese was not awarded the full amount it spent in defense costs between April, 2009 and May, 2011, the court found that OneBeacon owed Celanese $2,435,921.49 as reimbursement of reasonable defense costs for that period.

15

meaningful disparity between the law of Massachusetts and New York regarding an insurer's duty to defend." *Celanese Corp.*, 25 Mass. L. Rptr. 293, at *6. The court explained that its finding only applied with regard to the duty to defend, and that the court had not performed a choice of law analysis with regard to the duty to indemnify. *Id.* at *6, n.3. Therefore, despite OneBeacon's apparent contentions to the contrary, the court did not determine that the contract was necessarily governed by Massachusetts law. Rather, it applied Massachusetts law because there was "no meaningful disparity" in that dispute. In any event, before resolving the dispute at issue in this action and the Texas action, the relevant court must undertake a choice-of-law analysis. There is no reason to believe that this Court is better equipped to undertake such an analysis than the federal court in Texas. Indeed, it is unclear why Massachusetts law would apply.[6]

Furthermore, there is no reason to believe Celanese's filing in Texas is any more a result of forum-shopping than OneBeacon's filing in Massachusetts. Celanese's principal place of business is Texas, many of the underlying suits are pending in Texas, and Celanese contends that Texas is "where all the indemnity information is located, and where Celanese's witnesses are located." (Celanese Reply Support Mot. Dismiss 7). This case therefore does not appear to present a situation where "a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *See Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1353 (S.D.N.Y. 1992).

Under the circumstances, the Court sees no reason to depart from the usual rule. As the

---

[6] Commercial Union Insurance Company of New York issued the four primary liability policies to Celanese Corporation of America. Both Commercial Union and Celanese appear to have been based in New York at the time. There is nothing in the record, at least at this stage, to indicate any strong or clear connection with Massachusetts.

16

case presently stands, the Texas court should determine which of the two cases should go forward.

### C. Whether To Dismiss or Stay

As noted, there is a motion to remand pending in the Texas action. Because it is unclear what course of events will take place in the Texas courts, it appears that the most prudent course would be to stay this case rather than dismiss it. Accordingly, the Court will stay the present action pending developments in the Texas litigation.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is DENIED without prejudice to its renewal, and the present action is STAYED until further order of the Court.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: May 1, 2015